UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

SCOTT MICHAEL PATTERSON,  Case No. 11-34313-dof
                          Chapter 7 Proceeding
    Debtor.                Hon. Daniel S. Opperman
_____/
DANA NASON,

    Plaintiff,

v.                         Adversary Proceeding
                           Case No. 11-3542-dof
SCOTT MICHAEL PATTERSON,

    Defendant.
_____/

## TRIAL OPINION

### Facts

The Plaintiff in this case, Dana Nason, seeks a determination from this Court that the debt of $34,975.00 owed to her by the Defendant, Scott Patterson, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). This debt arises from an Arbitration Award entered after the Livingston County Circuit Court placed a civil action initiated by the Defendant against the Plaintiff into arbitration. The matters placed into arbitration included Ms. Nason's Assault and Battery, Stalking, and Intentional Infliction of Emotional Distress Counts. The relevant paragraphs of these counts state:

> 9. June 30, 2008, at about 2040 hours, Nason was lawfully in her own premises recovering from surgery at 814 North Court Street in Howell, Michigan.
> 10. At that time, date, and place, Patterson made an intentional and unlawful threat to do bodily injury to Nason by viciously striking her in the chest with both his hands, pushing her two separate times in the chest area with both his hands and then slamming his head into hers.

1

11. Patterson's threats to Nason were made under the most violent circumstances. While Patterson attempted to reach Nason after she ran into another room and locked the door attempting to flee his further assault. Patterson kicked the door so violently with his foot he destroyed the solid wood door jam. Patterson's actions created a well-founded fear of imminent peril in Nason as they would in any reasonable person.

12. Patterson had the apparent ability to carry out the act if not prevented.

13. Unfortunately, the acts were not prevented, and Patterson willfully and intentionally struck Nason on two occasions in the same incident by violently pushing Nason with both his hands in her chest area causing her to fall back into a sink and hyper-extending her recently surgically repaired abdominal muscles.

14. As a direct and proximate result of Patterson's assault and battery on Nason, she has suffered injury and damage, past, present and future, including the following:
    a. pain, suffering, and emotional distress
    b. humiliation, mortification and embarrassment
    c. medical expenses
    d. actual wage loss and lost earning capacity
    e. other injuries, damages, and consequences that are found to be related to the above assault and battery that develop or manifest themselves during the course of discovery.

15. As a direct and proximate result of the assault and battery, Nason has suffered a loss of society and companionship.

16. The assault and battery above was perpetrated upon Nason by Patterson in full view of her two (2) twin children aged six (6) years.

17. Nason had undergone three invasive procedures, abdominoplasty, augmentation mammoplasty, and umbilical hernia repair, within days and hours of the above assault and battery.

18. Patterson pled guilty to one (1) count of domestic violence where he received twelve (12) months probation, fines and other cost totaling eight-hundred and forty dollars for the assault and battery upon Nason.

. . .

21. After Patterson perpetrated the assault and battery upon Nason she made it clear to him that she did not desire any further contact with him.

22. Without Nason's consent and with disregards for her expressed desires, Patterson has willfully continued to repeatedly harass and terrorize her.

23. Patterson continues to approach and confront Nason in public places for no legitimate purpose other than to harass and terrorize her.

24. Patterson entered the home of Nason without permission to take pictures after admitting he did not live in the home.

25. Patterson entered the private home of Nason without permission for the sole purpose to find evidence to turn over to Child Protective Services.

25. [sic] Patterson continues to enter into the private home of Nason without

permission and has gone as far as removing six-hundred dollars of her personal effects from her home.

      26. Patterson entered the private home of Nason without permission and removed from the home one glove from each set of her winter gloves that she owns.

      27. Patterson made a complaint to Child Protective Services that was found to be without merit using evidence he obtained by entering Nason's home without permission.

      . . .

      32. Patterson's conduct as outlined above was intentional as apparent by his guilty plea for domestic violence against Nason.

      33. Patterson's conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

      34. Patterson's conduct as outlined above was for an ulterior motive or purpose.

      35. Patterson's conduct as outlined above has resulted in severe and serious emotional distress towards Nason and her children.

      36. As a direct and proximate result of Patterson's unlawful conduct towards Nason, she has been damaged in the manner outlined above.

After an arbitration hearing, the arbitrator stated:

      3. Defendant/Counter Plaintiff Dana Nason is hereby awarded the sum of $34,975.00 to be paid by Plaintiff/Counter Defendant Scott Patterson upon entry of this Judgment. This sum is full and final compensation for pain, suffering and emotional distress suffered by Dana Nason in connection with an assault and battery, stalking and intentional infliction of emotional distress claims. Upon payment in full of this sum, Dana Nason is to execute a full and final release of all claims in favor of Scott Patterson.

Afterward, on February 25, 2010, the Livingston County Circuit Court confirmed the Arbitration Award.

The Plaintiff filed an adversary proceeding after Mr. Patterson filed his Chapter 7 petition with this Court on September 13, 2011. The adversary proceeding progressed through the usual discovery and pre-trial stages, but prior to trial the Defendant's counsel withdrew. Trial was held on December 3, 2012, and both the Plaintiff, with counsel, and the Defendant, without counsel, appeared. On December 3, 2012, the Defendant admitted the existence of the Arbitration Award

and Order Confirming Arbitration Award, but requested time to procure documents that the Defendant believed would support his defense. The Court granted the Defendant's request. The Court reviewed the materials submitted to the Court by the Defendant and noted that the materials referenced a police report or other similar report, but no report was included. These materials are considered as the Defendant's exhibits, but were not filed because of personal information of the Defendant. The Court ordered the parties to supplement the record with the report and a copy of certain pleadings filed with the Livingston County Circuit Court. The Plaintiff's counsel filed documents with the Court that appear to complete the record. Accordingly, this matter is now ready for a decision.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts). The issues in this Adversary Proceeding arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and later by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## Law

Section 523(a)(6)

Section 523(a)(6) authorizes a bankruptcy court to exclude a debtor from receiving a discharge "from any debt for willful and malicious injury by the debtor to another entity or the property of another entity." The exceptions to discharge are to be narrowly construed in favor of the debtor. *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004) (citing *Meyers v. Internal Revenue Serv.*, 196 F.3d 622 (6th Cir. 1999)); *see also Walker v. Tuttle (In re*

4

*Tuttle)*, 224 B.R. 606, 610 (Bankr. W.D. Mich. 1998) ("Courts will narrowly construe the language of § 523 to assure the debtor has an opportunity for a fresh start."). A party must prove by a preponderance of the evidence that a debtor committed an injury that is both willful <u>and</u> malicious. *Grogan v. Garner*, 498 U.S. 279 (1991).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court discussed and determined the meaning of the language used in 11 U.S.C. § 523(a)(6). The issue before the United States Supreme Court involved "whether a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct" fell within 11 U.S.C. § 523(a)(6). *Id*. at 59. The Kawaauhaus argued that the malpractice award fell within the Section 523(a)(6) exception because Dr. Geiger engaged in the intentional act of providing inadequate medical services which led to Mrs. Kawaauhau's injury. *Id*. at 61.

In analyzing the parameters of the language "willful and malicious injury," the United States Supreme Court found that:

> [T]he word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." . . . [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences of an act*," not simply "the act itself."

*Id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

The United States Supreme Court further determined that to adopt the interpretation proposed by the Kawaauhaus would:

> place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, i.e., neither

> desired nor in fact anticipated by the debtor. . . . A "knowing breach of contract" could also qualify. A construction so broad would be incompatible with the 'well-known guide that exceptions to discharge "should be confined to those plainly expressed.'

*Id*. at 62 (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)).

More than a year later, the Sixth Circuit Court of Appeals considered the "willful and malicious injury" language contained in Section 523(a)(6), in *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455 (6th Cir. 1999). The Sixth Circuit Court of Appeals interpreted *Geiger* and noted that:

> [t]he [Supreme] Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury." The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury. Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.

*Id*. at 464.

Based on the language used and analysis of the United States Supreme Court in *Geiger*, the *Markowitz* Court announced the standard of the Sixth Circuit by holding that:

> unless 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Id*. (quoting Restatement (Second) of Torts § 8A, at 15 (1964)); *see Kennedy v. Mustaine*, 249 F.3d 576, 580 (6th Cir. 2001).

In addition to proving a willful injury, a party must also prove that the debtor committed a malicious injury. "'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citing *Tinker v. Colwell*, 193 U.S. 473, 486 (1904)). If a party fails to prove either

6

willful or malicious, the debt will be discharged. *Markowitz*, 190 F.3d at 463. Inferences can be made, however, if the circumstances surrounding the alleged injury warrant such:

> Determining whether a debtor acted both willfully and maliciously for purposes of § 523(a)(6) requires an examination of that person's state of mind. A debtor will rarely, if ever, admit to acting in a willful and malicious manner . . . [but] both requirements can be inferred through the circumstances surrounding the [involved] injury.

*O'Brien v. Sintobin*, 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000).

Section 523(a)(6) "triggers in the lawyer's mind the category 'intentional torts.'" *Geiger*, 523 U.S. at 62. Debts that have been determined to fall under Section 523(a)(6) have involved: defamation, malicious prosecution and abuse of process, legal malpractice, libel, patent infringement, intentional infliction of emotional distress, and usurpation of corporate business opportunity. *See Kennedy*, 249 F.3d at 576 (defamation); *Markowitz*, 190 F.3d at 455 (legal malpractice); *Abbo v. Rossi, McCreery & Assocs., Inc. (In re Abbo)*, 168 F.3d 930 (6th Cir. 1999) (malicious prosecution and abuse of process); *Wheeler*, 783 F.2d at 610 (state court libel judgment); *In re Trantham*, 304 B.R. at 298 (pre-petition patent infringement judgment); *Gonzalez v. Moffitt*, 252 B.R. 916 (B.A.P. 6th Cir. 2000) (intentional infliction of emotional distress); *Digital Commerce, Ltd., v. Sullivan*, 305 B.R. 809 (Bankr. W.D. Mich. 2004) (usurpation of corporate business opportunity).

Res Judicata

"As a general matter, the doctrine of res judicata forecloses relitigation of matters that were determined, or should have been raised, in a prior suit in which a court entered a final judgment on the merits." *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1143 (6th Cir. 1985) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)).

> "Res judicata" has both a general and a specific meaning. In its general sense it refers to the preclusive effects of former proceedings. This broad category is divided into two more specific groups: "res judicata" in its narrower sense, and

"collateral estoppel." Res judicata, in its narrow sense, refers to claim preclusion. Collateral estoppel refers to issue preclusion. Since the differences between the two require significantly different analyses, it is important to keep clear which is being discussed. . . . For clarity we prefer the more specific term, "collateral estoppel."

*Dodrill v. Ludt*, 764 F.2d 442, 443 (6th Cir. 1985).

Michigan courts have "adopted a broad application of res judicata that bars claims arising out of the same transaction that plaintiff could have brought but did not." *Eyde v. Charter Twp. of Meridian*, 324 N.W.2d 775, 777 (Mich. Ct. App. 1982) (*quoted in Dubuc v. Green Oak Twp.*, 312 F.3d at 736, 747) (6th Cir. 2002)).[1]

In Michigan, claim preclusion has the following elements: (1) the first action must have resulted in a decision on the merits; (2) the issues must have been resolved in the first action, either because they were actually litigated or because they might have been raised in the first action through reasonable diligence of the parties; and (3) both actions must be between the same parties, or their privies.

*Dubuc*, 312 F.3d at 747 (citing *Sloan v. City of Madison Heights*, 389 N.W.3d 418, 422 (Mich. 1986)).

## Analysis

In this case, all of the *Eyde* and *Dubuc* elements are met. The Livingston County Circuit Court action resulted in an Order Confirming the Arbitration Award between an action actually litigated by the same parties.

A careful review of the Livingston County Circuit Court pleadings and the Arbitration Award leave no doubt that the Defendant is responsible in damages to the Plaintiff. Also, the pleadings leave no doubt that the Section 523(a)(6) elements have all been met.

---

[1] "The Michigan Supreme Court has instructed that '[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, and whether they form a convenient trial unit.'" *Elder v. Harrison Township*, – F. Supp. 2d –, 2011 WL 1330672, at *9 (E.D. Mich. Apr. 6, 2011) (citing *Adair v. State of Michigan Dept. of Educ.*, 680 N.W.2d, 386, 398) (Mich. 2004) (emphasis in original).

The Court has reviewed and considered the materials sent by the Defendant, as well as the police reports. While these documents were helpful to allow the Court to understand the Defendant's role and position in these events, the information contained in those documents do not convince the Court that the Defendant has shown the requisite defense to the Plaintiff's Section 523(a)(6) action.

<u>Conclusion</u>

The Plaintiff has proven all of the elements of her Section 523(a)(6) action and the Defendant has failed to sustain the Defendant's burden of proof as to any defense to that action.

The Plaintiff is entitled to an Order determining that $34,975.00, plus costs and interest, is excepted from discharge under 11 U.S.C. § 523(a)(6). All efforts to collect this amount shall occur in the Circuit Court for Livingston County, Michigan.

The Court will enter an Order consistent with this Opinion.

Not for Publication.

cc: Brian Lavan
    Scott Patterson

**Signed on April 29, 2013**

                                         **/s/ Daniel S. Opperman**
                                         **Daniel S. Opperman**
                                         **United States Bankruptcy Judge**